373 P.2d 929

Lewis A. COX and Ruth Cox, husband and wife; and Burton Jones and Melissa Jones, husband and wife, Plaintiffs-Respondents,

v.

Ellie COX, Defendant-Appellant.

No. 9039.

Supreme Court of Idaho.

Aug. 6, 1962.

Kerr & Williams, Blackfoot, for appellant.

Jay Stout, Blackfoot, for respondent.

McFADDEN, Justice.

Plaintiffs (respondents) Cox and Jones are the owners of real property and holders of State leases of grazing lands in the Wolverine area, Bingham County, Idaho; their lands and leases adjoin properties owned and leased by the defendant, (appellant) Ellie Cox, who is a nephew of plaintiff Lewis A. Cox. All parties to this action graze cattle on their respective properties. Throughout the past several years there were numerous instances in which the cattle of the parties became commingled and would be grazing on each other's property.

Access to respondents' properties is by the road that is the subject of the litigation here, taking off from the Wolverine Creek county road. This access road leading south leaves the county road, traversing the property of the respondents Jones and Cox. A short distance off the county road a gate has been maintained for many years, and in later years, adjoining the gate a cattle guard has been placed. Further south on the road, and near Jones's cabin, another gate is across the road.

This present action arises from difficulties between these parties over the use of the road through respondents' properties, and from the commingling of the cattle of the parties on each other's properties. The respondents seek injunctive relief against the appellant to stop him from using the road in question and allowing his cattle to trespass on their property and leased ground. The appellant by counterclaim alleged the road was a public road and sought an injunction, against the respondents from obstructing the road and from allowing their cattle to trespass on his land and

leased ground. The trial court heard the case without a jury and entered judgment enjoining all parties from allowing their cattle to trespass on the land of the others, determining that the road was not public, but a private one, enjoining use by the appellant of the road in question and further enjoined any interference with the gates maintained by the respondents on the roadway.

From this judgment, appellant appeals. While some twenty-three assignments of error are presented, appellant summarizes the main issues before this court as follows: (1) whether a trespass should be enjoined where respondents fail to come into court with clean hands and when they have an adequate remedy at law; (2) whether the road in question is public or private; and (3) if the road is determined to be a private road, whether a prescriptive easement in favor of appellant to the use of the road has arisen. Since appellant's citation of authorities and argument in his brief are primarily directed to these three issues, the assignments of error unsupported by citation or argument will not be discussed. Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Kimball v. Kimball, 83 Idaho 12, 356 P.2d 919.

■ The trial court found that respondents have allowed their cattle to trespass on premises owned and leased by appellant, as well as finding that the appellant has allowed his cattle to trespass on premises owned and leased by respondents. This finding is fully substantiated by the evidence. The country in which the property of the parties is situate is mountainous, with the inherent difficulties of fencing in such a rugged country. Some fencing has been done by the parties, not as constituting enclosures, but merely by way of "drift fences". The drift fences did not prevent the cattle from roaming onto the adjoining properties. The problem is created by the normal tendency of cattle to move while grazing. That the trial court acted judiciously and correctly in enjoining both parties from allowing their cattle to trespass on the other's property cannot seriously be questioned by appellant, because by his own pleadings he charges that the respondents "have permitted their cattle to trespass upon the lease holds of counter-claimant (appellant) * * * causing severe and irreparable damage to the counter-claimant's lease holding." Appellant further charges respondents with the intent to continue to permit their cattle to trespass and damage his holdings, and prays for an injunction against them.

■ Appellant contends that this action should not be maintained, first for the reason that before an action in equity will lie, it must appear that the plaintiff has no adequate remedy at law, and that here respondents have an adequate remedy at law; and

secondly that the fundamental principle of equity that one seeking equity must do equity, or that a person must come into an equity court with clean hands, bars this action. In regard to appellant's first contention, it is fully answered by Goble v. New World Life Ins. Co., 57 Idaho 516, 67 P.2d 280. Quoting from Staples v. Rossi, 7 Idaho 618, 626, 65 P. 67, 69, in discussing what is now I.C. § 8–402, it was there stated:

> "'This statute modifies the old rules of chancery in regard to the issuance of injunctions. It says nothing whatever about the lack of an adequate remedy. We are therefore of the opinion that the authorities cited by the appellants to the effect that, if an adequate remedy exists in behalf of the plaintiffs, said injunction should be refused, have no application whatever to the case at bar, under the statute cited'."

As to the second contention, the maxim that one seeking equity must do equity, it must be pointed out that both appellant and respondent have presented this action in the trial court on the theory that both were respectively entitled to injunctive relief; appellant by his counterclaim seeking an injunction against respondents from allowing their cattle to trespass, also seeking an injunction against them for obstructing the roadway, and respondents seeking an injunction against appellant from allowing his cattle to trespass, and from using the road in question. This action was tried on the issues framed by the pleadings of the parties, and was tried in the district court on the theory that this was an action for injunctive relief. The record fails to disclose where the issue of the applicability of the doctrine of "clean hands" or of the maxim "That one seeking equity must do equity", was ever presented to the trial court for consideration. The rule is firmly established that parties are held to the theory upon which the action is tried, and issues not raised in the trial cannot be first presented here on appeal. Smith v. Shinn, 82 Idaho 141, 350 P.2d 348; Shipman v. Kloppenburg, 72 Idaho 321, 240 P.2d 1151; Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686.

As concerns the second issue mentioned by appellant, i. e., whether the road in question was a public or private road, I.C. § 40–103 provides in part:

> "Roads laid out and recorded as highways, by order of the board of commissioners, and all roads used as such for a period of five years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the board of commissioners, are highways. * * *"

This court in Ross v. Swearingen, 39 Idaho 35, 225 P. 1021, referring to the foregoing

section stated in language appropriate to the situation here:

"Appellants had the burden of establishing the existence of the public road described in the petition. They failed to prove that the road had been laid out and recorded as a highway by order of the board of commissioners, or that it had been used as such for a period of five years. R.S. § 851. Neither did they prove that the road had been laid out and recorded as a highway by order of the board of commissioners, nor that it had been used as such for a period of five years, and that it had been either worked and kept up at public expense or located and recorded by order of the board of commissioners. C.S. § 1304. There was evidence that the road had been used, but it was not established that it had been 'laid out and recorded' by order of the board of commissioners, or 'worked and kept up at the expense of the public,' or 'located and recorded by the order of the board of commissioners.' The evidence was sufficient to justify the court in concluding that the road was not a public road, but that it was one over which people had traveled at will, but on which land owners through whose lands it extended had felt at liberty for many years to maintain and had maintained gates."

See also: State v. Nesbitt, 79 Idaho 1, 310 P.2d 787.

■ Concerning the principle question of whether this was a public road, evidence of any use prior to 1893 is lacking. The trial court found the road was not in existence between 1888 and 1893 (during which period Sec. 851, Revised Statutes existed in its original form, under which any road used for five years was a highway, with no requirements it be worked or kept up at public expense). Other findings of the trial court were that prior to respondents building the road, various persons passed through the valley in which the road is located, using a natural cattle trail. Respondent Jones, built a gate across the path of the present road going to his cabin site in about 1926, and later built another gate across the trail by his cabin. In 1930 and 1931, the road was built from the county road to Jones' cabin, and later the road was extended to the end of respondent Cox's property. The maintenance of the road was done by the respondents, and the gates were kept closed and at times locked. The road was used by members of the public with consent and permission of the respondents. Respondent Jones paid a county employee $20.00 to go over the road with a road-grader one time, but the money was not received by Bingham County. On one occasion a county road-grader made one pass over

the road to a mine being developed by Nelson Cox, respondent Cox's brother and the father of appellant, but there was no evidence this work was done by Bingham County, but was done merely as a favor. There was a common custom in this area for county road crews to open up ranchers' roads to their yards, without charge or obligation on the part of the rancher; the road has never been used as a public highway for a period of five years, and it has not been worked or kept up at public expense.

■ While appellant challenges many of these findings of fact, asserting error in that they "are contrary to, and not supported by the weight of evidence submitted at the trial," nevertheless there is substantial evidence to support them. Thus this court cannot go behind such findings, and it is not the province of this court to say whether they are contrary to the weight of the evidence, that function being wholly for the trial court. Melton v. Amar, 83 Idaho 99, 358 P.2d 855.

■ It is uncontroverted that this road has not been laid out and recorded as a highway by order of the Board of county commissioners. The trial court found on substantial evidence that the road had not been worked and kept up at public expense. This road did not meet those requirements of I.C. § 40–103 to be classified as a highway.

In 1952 the Bingham County Commissioners wrote respondent Jones that it had been brought to their attention that he, Jones, had fenced and locked the gate across the road in question. In this letter it was stated:

"A resolution has been passed by the Board that you be notified to unlock this gate and allow stock and vehicles to follow this road immediately or it will be necessary for us to take action to condemn the land and open a road through the property. However, we hope this action will not be necessary."

While appellant contends this is a recognition by the county commissioners that this road was a public road, such conclusion is not justified, for in the letter itself, it is recognized that it may be necessary to condemn the land, an acknowledgment of the rights of respondent Jones to the land in question. The land over which the road traversed was not exempted from assessment for tax purposes.

■ Appellant points out that this particular road is a continuation of another road with which it connects; that this connective road has been maintained at county expense over the years and hence the maintenance of the connecting road constitutes maintenance at county expense of the road in question, thus making it a public highway. It is appellant's theory

that it is not necessary that a highway be worked throughout its entire length, at public expense, to come within the preview of I.C. § 40-103, citing Gross v. McNutt, 4 Idaho 286, 38 P. 935. The holding in that case is not applicable. Here the maintenance work done on the county road was done for the maintenance of that road alone. The record is devoid of evidence that it was done with the thought in mind it be considered as work on the road in question. To so extend the rule of the Gross v. McNutt case (supra) would mean that by public maintenance on any county road, automatically every lane or road that touched or crossed such county road, would become a public one. The road in question was not an integral part of the county road. Access alone to a county road on which public maintenance is done cannot logically be considered as sufficient to make applicable the holding of Gross v. McNutt, (supra).

■■■Witnesses for both parties concurred that gates had been maintained across the road in question for many years, the only area of dispute being the time when the gates were first erected. Where gates are in existence across a road barring the passage and making it necessary to open them in order to use the road, the existence of such gates is considered as strong evidence that the road was not a public road. Ross v. Swearingen, 39 Idaho 35, 225 P.

1021; Peasley v. Trosper, 103 Mont. 401, 64 P.2d 109; Smithers v. Fitch, 82 Cal. 153, 22 P. 935; Board of County Commissioners of Jackson County v. Owen, 96 Okl. 538, 166 P.2d 766; Irion v. Nelson, 207 Okl. 243, 249 P.2d 107.

The trial court's conclusion that this was not a county road and that appellant had no right to use it as a public highway is fully sustained by the record.

■■■ The evidence fails to establish appellant's claim to a prescriptive right in this road. To establish such a prescriptive right in a roadway it is essential that the use of the way must constitute some actual invasion or infringement of the right of the owner. Simmons v. Perkins, 63 Idaho 136, 118 P.2d 740. It is the contention of appellant, however, that under the general rule that proof of an open, notorious, and uninterrupted user for the prescriptive period, without evidence of how it began, raises a presumption that it was an adverse use and under a claim of right. He points to the fact that the roadway was used by himself and his father uninterruptedly and continuously for more than the prescriptive period, contending that such uninterrupted use makes applicable the presumption in his favor that the use was hostile.

■■■ As a general proposition appellant's contention concerning the presumption that arises from uninterrupted use of

an easement for the prescriptive period is correct. See: Sinnett v. Werelus, 83 Idaho 514, 365 P.2d 952; Eagle Rock Corp. v. Idamont Hotel Co., 59 Idaho 413, 85 P.2d 242; Northwest & Pacific Hypotheekbank v. Hobson, 59 Idaho 119, 80 P.2d 793. Such a presumption, in Idaho, at least, has not been considered as an irrefutable or conclusive presumption. Last Chance Ditch Co. v. Sawyer, 35 Idaho 61, 204 P. 654.

■ This general rule fixing the presumption of adverse use is applicable to improved lands, and the lands cultivated and enclosed. However, when one claims an easement by prescription over wild or unenclosed lands of another, mere use of the way for the required time is not generally sufficient to give rise to a presumption that the use is adverse. Fullenwider v. Kitchens, 223 Ark. 442, 266 S.W.2d 281, 46 A.L.R.2d 1135; Clarke v. Clarke, 133 Cal. 667, 66 P. 10; Todd v. Sterling, 45 Wash.2d 40, 273 P.2d 245. Northwest Cities Gas Co. v. Western Fuel Co., 13 Wash.2d 75, 123 P. 2d 771; The Mountaineers v. Wymer, 56 Wash.2d 721, 355 P.2d 341; Hester v. Sawyers, 41 N.Mex. 497, 71 P.2d 646, 112 A.L.R. 536; See also: Cases in the annotation, 46 A.L.R.2d 1140; 17A Am.Jur. 683, Easements § 71; 28 C.J.S. Easements § 68 p. 734. See discussion in dissenting opinion in Aguirre v. Hamlin, 80 Idaho 176, 327 P. 2d 349, in a dissenting opinion where the majority opinion neither accepted nor rejected this rule, determining that case on other principles.

The underlying reason for this rule is well expressed in Fullenwider v. Kitchens, supra, as follows:

"The reason for the rule that a passageway over uninclosed and unimproved land is deemed to be permissive is sound and also easily understandable, * * *. It assumes that the owner of such land in many instances will not be in position to readily detect or prevent others from crossing over his land, and, even if he did, he might not enter any objection because of a desire to accommodate others and because such usage resulted in no immediate damage to him. Also in such instances the landowner would probably have no reason to think the users of the passageway were attempting to acquire any adverse rights. On the other hand there would be no reason or basis for such inference of permission on the part of the landowner if someone tore down his fence or destroyed his crops by reason of such usage. These acts alone would be calculated to put the landowner on notice that others were using his land adversely to his own interest and right of occupation."

■ The trial court's determination that the use of this road by others with

permission of respondents, is fully substantiated by the record; under the law the use being permissive, no prescriptive rights arose as to its use by appellant.

Judgment affirmed.

Costs to respondents.

SMITH, C. J., and TAYLOR, KNUDSON and McQUADE, JJ., concur.