(January 25, 1908.)

O. K. MESERVEY, Road Overseer, Respondent, v. S. K. GULLIFORD, Appellant.

[93 Pac. 780.]

HIGHWAYS—PRESCRIPTIVE RIGHT—ALLEGATIONS OF COMPLAINT—HIGH-WAYS DULY LAID OUT OR ERECTED—PENALTY FOR OBSTRUCTING—BOARD OF COUNTY COMMISSIONERS—DUTIES OF WITH REFERENCE TO HIGHWAYS—METHODS OF ESTABLISHING HIGHWAYS—DUTY OF ROAD OVERSEER—OBSTRUCTIONS—REMOVAL OF—RIGHT TO MAINTAIN AC-TION—ROAD OVERSEER PUBLIC OFFICER—ADVERSE POSSESSION—PUB-LIC EASEMENT—MINUTE-BOOK—ROAD-BOOK—SECONDARY EVIDENCE—PRESUMPTION IN FAVOR OF ACTS OF OFFICERS—WIDTH OF HIGH-WAYS ESTABLISHED BY PRESCRIPTION—MEANING OF PHRASE, "MORE THAN TEN YEARS"—FAILURE TO FIND ON MATERIAL ISSUES.

1. *Held*, that this action was brought concerning a road that has become a highway by user as defined by the provisions of sec. 851, Rev. Stat., as amended by act of 1893 (Sess. Laws 1893, p. 12).

2. The provisions of sec. 960, Rev. Stat., apply to encroachments upon highways "duly laid out or erected," and the penalty pre-scribed in sec. 963, Rev. Stat., for making encroachments upon public highways, applies to such highways and does not apply to highways established by prescription or user before such highways have been recorded as provided by law.

3. Roads are defined by sec. 851, Rev. Stat., as amended by Sess. Laws 1893, p. 12, as "roads laid out and recorded as highways by order of the board," and also all roads "used as such for a period of five years," provided the latter shall have been worked and kept up at the expense of the public or located and recorded by order of the board of county commissioners, are declared to be highways.

4. Roads used as such for a period of five years, that have been worked and kept up at public expense, are public highways whether they are recorded or not.

5. The road overseer is the proper party, under our statute, to bring an action to abate a nuisance when such nuisance con-sists of an obstruction to a public highway within his district.

6. It is not necessary in an action to remove an obstruction from a highway established by user, to allege title to a highway by adverse possession, under the provisions of sec. 4039, Rev. Stat., as the only right acquired by the public is an easement in the

land, consisting of a right to pass over the same and keep the highway in repair. The legal title to the land remains in the owner of the abutting land.

7. The public use of a highway for the statutory period and the keeping of it in repair at public expense is all that is necessary to establish a highway by prescription. The consent of the owner of the land, or his dissent, makes no difference.

8. Either the "Minute-book" or the "Road-book" required to be kept by the board of county commissioners, under the provisions of secs. 853 and 1754, Rev. Stat., is competent evidence to show the appointment of a road overseer, and his testimony may be received upon that question.

9. There is no presumption of official irregularity and the one asserting such official irregularity has the burden of proving it. .

10. The road overseer is an elective officer, and the board of county commissioners has the appointing power in case of a vacancy in that office.

11. Under the provisions of sec. 932, Rev. Stat., all highways, except alleys and bridges, must be at least fifty feet wide, excepting those existing prior to the enactment of that section of a less width, and the width of roads or highways established by prescription or public use must be determined from a consideration of the facts and circumstances peculiar to the case, and is presumed to be fifty feet, unless the facts and circumstances of the case clearly indicate that the owner, over whose land the road runs, has limited the width of said road to a less width than fifty feet prior to the time said road became a highway by user.

12. Where it is alleged in the complaint that for more than ten years immediately preceding the commencement of the action the road had been traveled by the public generally, it is error for the court to admit evidence that such road was established by public user for more than nineteen years prior to the commencement of the action, and find that a highway had there been established by user under a law that did not require such highway to be kept up at public expense, which law had been amended more than thirteen years prior to the commencement of this action, and under which amendment this action was brought.

13. As this action was brought under the provisions of the law requiring roads to be used by the general public and kept up at public expense for five years, it was error for the court not to find whether said road had been kept up at public expense for that period.

14. It was error to hold that said road had been established under a law which did not require it to be kept up at public expense, and which had been repealed more than thirteen years prior to the commencement of this action.

15. The allegation that a road has been used as a public highway for more than ten years prior to the commencement of an action cannot be treated as definitely describing a longer period than ten years and one day.

(Syllabus by the court.)

APPEAL from the District Court of Sixth Judicial District for Fremont County. Hon. J. M. Stevens, Judge.

Action by road overseer to remove an obstruction in a public highway alleged to have been established by prescription. Judgment for plaintiff. *Reversed.*

Caleb Jones, for Appellant.

"The words 'duly laid out or erected' have reference to the formal or official action, which the law enjoins upon those charged with the duty of establishing public highways." (*Freshour v. Hihn*, 99 Cal. 443, 34 Pac. 87.)

"The statute, fixing a penalty for encroachment upon highways, applies only to those laid out as provided by law, and not to those which have become highways by public user." (*Parker v. People*, 22 Mich. 93; *State v. Babcock*, 42 Wis. 138.)

The California court recognizes the fact, as contended for by appellants, that a road overseer has absolutely no authority to officially institute an action for the abatement of a public nuisance, unless he is especially authorized by statute. (*Smith v. Talbot*, 77 Cal. 16, 18 Pac. 795.) What law authorizes a road overseer to bring actions for the abatement of public nuisances under the facts set forth in plaintiff's complaint? It is true he is authorized by secs. 960 and 963, Rev. Stat., to bring an action, but then only under special circumstances, and those circumstances are not alleged to exist in this action.

The court erred in refusing to strike from the record all evidence in relation to the appointment of O. K. Meservy as road overseer. The records of public officers are the best evidence of their contents and existence, and secondary evidence thereof is admissible only upon proper showing that the original can-

not be produced. (*Hurley v. City of West St. Paul*, 83 Minn. 401, 86 N. W. 427; 10 Ency. of Ev. 809.)

Our statutes provide in what record all matters pertaining to roads and road districts shall be kept; i. e., a "road-book." The "road-book" was the only primary evidence of facts, sought to be shown by the introduction of secondary evidence contained in minute-books of commissioners' proceedings. (10 Ency. of Ev. 720, 721, 809, 875 and 934.) "The commissioners of highways are required by law to keep a record of their proceedings at all meetings, and such records are the only legal evidence of the action to which they refer, and cannot be contradicted, aided, or supplemented by parol evidence." (*O'Connell v. Chicago T. T. R. Co.*, 184 Ill. 308, 56 N. E. 355.)

The plaintiff does not even claim the road to have been used for more than ten years and a day, for the words "more than ten years" mean nothing more. (*Bauserman v. Blunt*, 147 U. S. 647, 13 Sup. Ct. 466, 37 L. ed. 316.) "The existence of the highway by prescription is not shown by evidence of the indefinite and indiscriminate use of a wide extent of open prairie and the various wagon tracks thereon, during the prescriptive period." (*Friel v. People*, 4 Colo. App. 259, 35 Pac. 676.) "The mere fact that individuals, many or few, may have traveled along this road or over the same for more than fifteen years is not enough to constitute a public highway where the land itself is vacant and unoccupied, as this has been, and where no action has been taken by the public authorities to constitute the road a public highway, or to keep it in repair, or to maintain it as such. (*Smith v. Smith*, 34 Kan. 293, 301, 8 Pac. 385, 390, and authorities there cited; Angell on Highways, 3d ed., sec. 151; *State v. Horn*, 35 Kan. 717, 12 Pac. 149.)

"The best evidence of user by the public is the fact that the proper authorities have appointed overseers and designated hands to work and assumed the responsibility of keeping the way in repair." (*Mosier v. Vincent*, 34 Iowa, 478; *State v. Fisher*, 117 N. C. 733, 23 S. E. 158.)

Soule & Soule, for Respondent.

The complaint in this case was filed under the sections of the California statutes, of which secs. 960 and 963, Rev. Stat., are an exact copy.

This case of *Freshour v. Hihn,* 99 Cal. 443, 34 Pac. 87, is exactly like the case at bar in every particular and under identical facts, and every issue is decided in favor of respondent. We are willing to rest the question of the pleadings and the sufficiency of the complaint on this case alone.

The question as to the authority of the road overseer to bring an action like the one at bar has been expressly decided by this court in the case of *Gross v. McNutt,* 4 Ida. 286, 300, 38 Pac. 935. The road overseer of a road district is the only public officer under our statutes that under any circumstances can bring an action to remove an obstruction from a public highway. (*Hall v. Kauffman,* 106 Cal. 451, 39 Pac. 756; *San Benito County v. Whitesides,* 51 Cal. 416; *Bailey v. Dale,* 71 Cal. 34, 11 Pac. 804.)

Sec. 4039, Rev. Stat., has no application whatever to public highways since, under the laws of Idaho, the public never owns the legal title to the land over which a highway extends. All the right the public or county ever acquire or ever claim is an easement in the land with the right to pass over the same. The legal title still remains in the owner of the adjoining land. (Sec. 860, Rev. Stat.) It is never necessary to allege adverse possession in an action like the one at bar. All that is required is that the road be used as a public highway for the statutory period, and whether or not the claim was adverse makes no difference. The consent of the owner of the land or his dissent makes no difference. (*Gross v. McNutt,* 4 Ida. 300, 38 Pac. 935, on rehearing; *Thurston County v. Walker,* 27 Wash. 500, 67 Pac. 1099; *Bolger v. Foss,* 65 Cal. 250, 3 Pac. 871.)

It is competent for the plaintiff to testify that he was the road overseer. (*Barry v. Smith,* 191 Mass. 78, 77 N. E. 1099, 5 L. R. A., N. S., 1028.) The appointment was also proven by record evidence.

The original "minute-book" of the county commissioners' proceedings was the original record, and the road-book is by law necessarily secondary evidence. The presumption of law is that public officers act within their authority until the contrary is shown, and the making of the appointment of road overseer raises the presumption that there was a vacancy. (16 Cyc. 1076, c; *Mercer Co. Traction Co. v. United N. J. R. Co.*, 64 N. J. Eq. 588, 54 Atl. 819.) The board could legally act in making the appointment if a vacancy existed, and since the record is silent on this question, the presumption is that the board acted within the law and that the vacancy did exist. (*Collins v. Valleau*, 79 Iowa, 626, 44 N. W. 904; 16 Cyc. 1076.)

The commissioners need only comply substantially with the statutes; technical objections will be overlooked. (*Canyon County v. Toole*, 8 Ida, 501, 69 Pac. 320.)

The court will not presume any fact or omission to vitiate the action of public officers, and when by statute they are required to do any act as preliminary to another, it will be presumed that they have discharged their duty. (*Ballerino v. Mason*, 83 Cal. 447, 23 Pac. 530; *Dunlap v. Monroe*, 11 U. S. (7 Cranch) 242, 3 L. ed. 329.)

SULLIVAN, J.—This action was commenced by the plaintiff as road overseer, against the defendant, who is appellant here, to compel him to remove certain fences and gate, which it is alleged constitute an obstruction to a highway. This action was commenced on May 23, 1906, and it is alleged that for more than ten years immediately preceding the commencement of this action, "continuously and uninterruptedly, except when interfered with during the past two years by the defendant," the public generally have enjoyed and used a public highway over, across and through certain lands, describing them, and that with the exception of the past two years, when interfered with by the defendant, said road has been used and worked and kept up at the expense of the public as a highway for the convenience of the public under the direction and supervision of the board of county commis-

sioners of Fremont county. It is also alleged that more than ten days prior to the commencement of this action, plaintiff served personally upon the defendant written notice requiring him to remove said obstruction from said highway within ten days from the service of notice, and prays that the defendant be restricted from maintaining such obstructions to said highway, and that they be abated as a public nuisance, and that he have judgment against the defendant for $10 per day as damages for every day that such obstructions remain upon said public highway after the service of said notice.

Those allegations were denied by the answer. The answer also denies on information or belief that the plaintiff is road overseer of Road District No. 20 in Fremont county, as alleged in the complaint, and denies that said gate and fences are obstructions to any highway or encroachments thereon.

The cause was tried by the court without a jury, and the court found that the plaintiff was the duly qualified and acting road overseer of Road District No. 20 in Fremont county; that said district was created by order of the board of county commissioners on April 24, 1902; that the defendant was the owner of a certain tract of land in said road district, describing it, and that from 1887 to the spring of 1905, the road described in the complaint was continuously and uninterruptedly used and traveled by the public as a public road, and that the same was necessary for the convenience and use of public travel; that sometime during the spring of 1905, the defendant erected fences and other obstructions across the north end of said highway, and also maintains various structures, fences and obstructions in and across said highway, and thereby shuts off and segregates the same from the public highway extending on either end of the same, and thereby shuts out and prevents the public from using such highway for public travel; that written notice was properly served on the defendant, requiring him to remove such obstructions more than ten days prior to the commencement of this action.

As conclusions of law, the court finds that the fence and obstructions placed upon said highway are a nuisance and should be abated, and the defendant be enjoined from further ob-

structing said highway; that the strip of land described in the findings has been used and traveled by the public for such length of time that the same has become a highway by user, and that said strip of land is a public highway. Judgment was entered in accordance with said findings and conclusions of law in favor of the plaintiff. The appeal is from the judgment.

Counsel for appellant assigns a great many errors going to the action of the court in overruling a demurrer to the amended complaint, the admission and rejection of evidence, and that the findings of fact are not sufficient to support the judgment; that such findings are not supported by the evidence and are in direct opposition thereto and are not responsive to the issues in the case. At the outset, it is contended by counsel for appellants that this action is brought under the provisions of secs. 960 and 963, Rev. Stat., which sections are as follows:

"Sec. 960. If any highway duly laid out or erected is encroached upon by fences, buildings, or otherwise, the road overseer of the district may, orally or in writing, require the encroachment to be removed from the highway."

"Sec. 963. If the encroachment is denied, and the owner, occupant, or person controlling the matter or thing charged with being an encroachment, refuses to remove or to permit the removal thereof, the road overseer must commence in the proper court an action to abate the same as a nuisance; and if he recovers judgment, he may, in addition to having the same abated, recover ten dollars for every day such nuisance remained after notice, as also his costs in such action."

This action was brought concerning a road that had been established under the provisions of sec. 851, Rev. Stat., as amended by laws 1899, p. 12, by user and by being kept up at public expense, and not in regard to a road that had been duly laid out, erected or recorded by order of the board of county commissioners.

The provisions of said sec. 960 apply to encroachments upon highways "duly laid out or erected," and it is not alleged

in the complaint that the highway referred to therein had been duly laid out or erected, but that it had been used, worked and kept up at the expense of the public as a public highway for a period of more than ten years prior to the commencement of this suit. There is nothing in this contention, for under the allegations of the complaint, the highway referred to was one established by user and not one that had been "duly laid out or erected" by the board of county commissioners. Said sec. 963 provides for a penalty against one who has made encroachments upon a public highway and refuses to remove them after notice has been served upon him for the removal thereof. There is a distinction between an encroachment and an obstruction. A penalty was asked for in the prayer of the complaint, but the court, no doubt, taking the view that the penalty there prescribed applied only to highways that had been duly laid out or erected by the board of county commissioners, or recorded as provided by law, and not to highways that had been established by prescription or user, did not enter any judgment against the defendant for the penalty. However, the court failed to give the road overseer judgment for any penalty whatever, and the defendant has no cause of complaint because of the court's refusal to enter judgment against him for the penalty. Under a statute like our sections 960 and 963, the supreme court of California in *Freshour v. Hihn,* 99 Cal. 443, 34 Pac. 87, held that the right of a road overseer to recover the penalty of $10 per day for obstructing a highway does not extend to a case where the highway is established by user or abandonment to the public and has not been recorded as a highway, and we think that is the correct view of that matter under our statute. (*Parker v. People,* 22 Mich. 93; *State v. Babcock,* 42 Wis. 138.)

Under the provisions of subd. 2, sec. 870, as amended by laws 1899, p. 127, the board of county commissioners are required to cause to be surveyed, viewed, laid out, recorded, opened and worked such highways as are necessary for public convenience. There is no allegation in the complaint showing that the highway referred to therein has been duly re-

corded as provided by said section. Roads are defined by sec. 851, Rev. Stat., as amended by Session Laws 1893, p. 12, as follows:

"Roads laid out and recorded as highways by order of the board of county commissioners, and all roads used as such for a period of five years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the board of county commissioners, are highways."

It will be observed from those provisions that in order to establish a road as a highway, it does not necessarily need to be recorded; that is, that class of roads used as such for a period of five years that have been worked and kept up at the expense of the public, are highways whether they are recorded or not.

It is next contended by counsel for appellant that the road overseer has no authority to bring an action to remove obstructions from a highway. Under the provisions of sec. 873, Rev. Stat., as amended by Session Laws 1899, p. 128, the road overseers, under the direction, supervision and pursuant to the order of the board of county commissioners, must take charge of the public highways within their respective districts and keep them clear from obstructions and in good repair. The highways established by user or prescription are thereby placed under the control of the road overseer subject to the order of the board, and it is made his duty to keep such highways clear from obstructions and in good repair. Under the provisions of said section, the road overseer is authorized to remove obstructions from highways established by user, and we think he has full authority, under the orders of the board, to maintain an action to remove obstructions placed therein. At the date of the passage of said amendatory act, the road overseers were appointed by the board of county commissioners, but an act was thereafter passed which provided for their election, thereby making them public officers. (Sess. Laws 1899, p. 306.) In the case of *Freshour, Road Overseer, v. Hihn, supra,* a road overseer was the plaintiff and his right to maintain that action was not questioned.

Sec. 3634, Rev. Stat., provides that "A public nuisance may be abated by any public body or officer authorized thereto by law." Under the provisions of sec. 873, *supra*, it is provided that the road overseer must take charge of the public highways in his district and keep them clear from obstructions and in good repair, and under the provisions of the laws of 1899 (Sess. Laws, p. 360), road overseers are elected by the electors of the road district and are made public officers. The road overseer thus becomes a public officer and the law makes it his duty to keep the highways clear from obstructions, and as he is a public officer, he is authorized by the provisions of sec. 3634, *supra*, to bring an action to abate a public nuisance, when such nuisance consists of an obstruction placed upon a highway within his road district.

In *San Benito Co. v. Whitesides*, 51 Cal. 416, the court held that "an action to abate a nuisance caused by an obstruction to the public highway cannot be brought in the name of the county as plaintiff, and must be brought in the name of the road overseer." The road overseer is the proper party under our statute to bring an action to abate a nuisance when such nuisance consists of an obstruction to a public highway within his district. If the road overseer has no such authority, it certainly would place the county at a great disadvantage, as the boards of county commissioners in this state only have quarterly sessions and are in session but a few days at a time. Highways might be obstructed weeks before the board could order an action to be brought to remove them.

I conclude under our law that the road overseer has authority to bring actions to remove obstructions from highways either laid out or recorded as highways, or such as have been established by user or prescription. Sec. 963, Rev. Stat., provides that if one who has made encroachments on the highway refuses either to remove or to permit the removal thereof, the road overseer must commence an action to abate the same as a nuisance and for the penalty; but the California courts have held under a similar statute that the provisions of that section, at least so far as it applies to the penalty,

only apply to roads or highways duly laid out or erected and recorded.

It is next contended by counsel for appellant that since it is alleged in the complaint that the appellant is the owner of the land over which such highway extended, the complaint should have alleged a claim of title to the highway by adverse possession, under the provisions of sec. 4039, Rev. Stat. That section of the statute has no application whatever to public highways, since under the law the public never acquires the legal title to land over which a highway extends. All the right acquired by the public is an easement in the land consisting of a right to pass over the same and keep the road in repair. The legal title to said land remains in the owner of the adjoining land or the land over which the road runs. It is not necessary to allege adverse possession in an action like the one at bar. The public use of a highway for the statutory period and the keeping of it in repair at public expense is all that is necessary to establish it as a highway. The consent of the owner of the land or his dissent makes no difference. (*Gross v. McNutt,* 4 Ida. 300, 38 Pac. 935.)

It is next contended that the court admitted secondary evidence as to the appointment of the road overseer. It appears from the record that the minutes of the board of county commissioners contained a record of the appointment of the respondent road overseer, and that record was introduced in evidence, supplementing the testimony of the road overseer himself to the effect that he had been duly appointed road overseer. It is contended that under our law, sec. 1754, Rev. Stat., that the board is required to have kept a book known as the "road-book," which must contain all proceedings and adjudications relating to the establishment, maintenance, change and discontinuance of roads and road districts and overseers thereof, their reports and acts, and that that book was the best evidence of the appointment of said road overseer, and under the provisions of sec. 853, the clerk of the board of county commissioners is required to keep a book in which he must record separately all proceedings of the board relative to each road district, including orders, laying out, al-

tering and opening roads, etc., and it is contended that such books are the primary and best evidence of the appointment of a road overseer. Under the provisions of sec. 1754, the board is required to keep a minute-book in which must be recorded all orders and decisions made by them, and the daily proceedings had at all regular and special sessions, and under the laws of 1899, p. 248, the board of county commissioners, at the adjournment of each session of the board, is required to publish a statement such as will clearly give notice to the public of all acts and proceedings of the board. Said "minute-book," if it contains all orders and decisions made by the board, certainly is the book of original entry as to the appointment of road overseers, although a "road-book" is required to show that fact also. If all the original orders and proceedings are first entered in the "minute-book," that certainly would be the best evidence, or equal evidence, of the appointment of a road overseer to that of the "road-book." We do not think the court erred in admitting said "minute-book" showing the appointment of said road overseer. In *Barry v. Smith,* 191 Mass. 78, 77 N. E. 1099, 5 L. R. A., N. S., 1028, it was held that in proving the fact that a man is a public officer, his own testimony that he is such officer is competent evidence. The court did not err in permitting the road overseer to testify that he was road overseer of said district and did not err in admitting said "minute-book" to show that fact.

It is contended that as respondent was appointed road overseer by the board, that the order making the appointment must contain a recital that there was a vacancy in that office, and that without this recital, the commissioners would have no authority to make the appointment. There is nothing in this contention, as the presumption is that public officers act within their authority until the contrary is shown and the making of the appointment raises the presumption that there was a vacancy. (16 Cyc. 1076.) *Mercer County Traction Co. v. United N. J. R. Co.,* 64 N. J. Eq. 588, 54 Atl. 819, is in point, and it is there said: "It is, moreover, a rule of procedure that the burden of proving unlawful or irregular conduct

Idaho, Vol. 14—10

146    MESERVEY v. GULLIFORD.    [14 Idaho,

rests upon him who asserts it, since there is no presumption of official irregularity." (16 Cyc. 1078.) In *Valley Township v. King Iron B. & M. Co.*, 4 Kan. App. 622, 45 Pac. 660, it is said: "In the absence of an affirmative showing, it will be presumed that the officers were in the rightful performance of duty and that the conditions existed which authorized them to act as they did." (See, also, *Harper v. City of Conway Springs*, 9 Kan. App. 609, 58 Pac. 488.)

Under our statute, the board of county commissioners could legally act in making an appointment if a vacancy existed, and since the record is silent on that question, the presumption is that the board acted within the law and that the vacancy did exist. In the case of the *County of Canyon v. Toole*, 8 Ida. 501, 69 Pac. 320, this court held that a substantial compliance with the statute by the board of commissioners was all that was necessary. Technical objections are not viewed with favor.

It is contended by counsel for appellant that the court erred in finding the width of the highway described in the complaint to be a strip of land twenty-five feet wide on each side of the southwest boundary line of the southwest quarter of sec. 15, township 7 N. of range 41 E., B. M., and that the same had continuously and uninterruptedly been used and traveled by the public as a road from 1887 to the spring of 1905. It is urged that the trial court in this finding added twenty-five feet to the width of the road more than the evidence shows was used as a highway. At least one witness testified that said road was twenty-five feet wide on each side of said section line; that it was approximately twenty-five feet each side of the line. He further testified that the road was fifty feet wide, approximately; that the strip of land traversed there was approximately fifty feet wide.

Under the provisions of sec. 932, Rev. Stat., all highways, except alleys and bridges, must be at least fifty feet wide, excepting those consisting of a less width at the date of the enactment of said section. This statute evidently provides the width of a road that is considered reasonably necessary for the convenience of the public generally. In *Whitesides v. Green*,

13 Utah, 341, 57 Am. St. Rep. 740, 44 Pac. 1032, which involved the width of a public highway established by prescription, the court held that the width must be determined from a consideration of the facts and circumstances peculiar to the case, because in such event the court cannot say that any highway is of a certain width "in the absence of statutory provisions." In Angell on the Law of Highways, sec. 155, the author says:

"Where there is no other evidence of dedication than mere user by the public, the presumption is not necessarily limited to the traveled path, but may be inferred to extend to the ordinary width of highways; or, if the road be inclosed with fences, to include the entire space so inclosed."

The court in *Burrows v. Guest*, 5 Utah, 91, 12 Pac. 847, said:

"When a highway is established by user merely over a tract of land of the usual width of a highway, or over a tract of land where, by a survey and plat, which has been recognized and adopted by the owner, a street or highway of a certain width is laid out, the right of the public is not limited to the traveled part, but such user is evidence of a right in the public to use the whole tract as a highway, by widening the traveled part or otherwise, as the increased travel and the exigencies of the public may require. . . . . In determining the extent of the dedication, all the circumstances may be considered—the width of the highways in the vicinity of the land in question, the width of highways in a system of which the one in controversy forms a part, any circumstances of recognition by the owner of the fee and the public of definite and fixed limits."

In Elliott on Roads and Streets, sec. 174, the author states:

"If the right to the way depends solely upon user, then the width of the way and the extent of the servitude is measured by the character of the user, for the easement cannot be broader than the user; but if there were defective proceedings, and the use was under color of the claim supplied by them, then the extent of the easement should generally be measured by the claim exhibited by the proceedings and by them intended to be established. This is in strict accordance with

the elementary principle of the law of real property, which declares that, where there is color of title, and possession of part is taken under the claim of title, it will cover the whole, but that where there is no color of title, the right will not extend beyond the actual possession, the *pedis possessio*. But it may be doubted if that rule applies in all its strictness to highways acquired by user and prescription. While it is true that the extent of the servitude is measured by the character of the user, and that, in a general sense, the easement cannot be broader than the user, yet the right of the public is not necessarily limited strictly to the main traveled path in all instances, and it has even been held in some jurisdictions that the user may evidence a right to a way of the statutory or usual width in the neighborhood.''

It would seem that the right acquired by prescription and user carries with it such width as is reasonably necessary for the reasonable convenience of the traveling public, and where the public have acquired the easement, the land subject to it has passed under the jurisdiction of the public authorities for the purpose of keeping the same in proper condition for the enjoyment thereof by the public. (See *Whitesides v. Green, supra.*) And where the right is so acquired, such width must be determined from a consideration of the facts and circumstances peculiar to each case. However, it must be borne in mind that the statute fixes the width of highways at not less than fifty feet, and common experience shows that width no more than sufficient for the proper keeping up and repair of roads generally.

It is further contended that it was error for the court to find, under the issues made by the pleadings and the proof, that said highway had existed since June, 1887. On this point the complaint alleges as follows:

''That for more than ten years immediately preceding the commencement of this action, continuously and uninterruptedly, except when interfered with during the past two years by the defendant, the public generally have enjoyed and used a public highway over, across and through the said described lands.''

It is contended that as this suit was commenced on May 10, 1906, it was error for the court to admit evidence tending to show that said road was first traveled in June, 1887. It is contended that the allegation, to wit, "that for more than ten years immediately preceding the commencement of this action," etc., did not extend back further than ten years and one day, and that it was error for the court to admit evidence to show that the road was first traveled as early as June, 1887, that being about nineteen years before the commencement of the action. On this point, appellant cites *Bauserman v. Blunt,* 147 U. S. 647, 13 Sup. Ct. 466, 37 L. ed. 316. In the complaint in that action, it was alleged that the debtor before his death was absent from the state "for more than five years." The court held that that allegation could not be treated as definitely describing a longer period than five years and one day. Going back to June, 1887, the court held that the road in question had been traveled continuously up to the spring of 1905. The court fails to find that said road had been worked and kept up at the expense of the public or that it had been located and recorded by order of the board of county commissioners as a highway, as provided by said sec. 851, as amended by the Session Laws of 1893, p. 12. But it is contended by counsel for respondent that said road was established as a highway under the provisions of said sec. 851 before its amendment, which did not require the road to be kept up at the expense of the public. The difficulty arises from the fact that it is alleged in the complaint that said road had been used by the public and kept up at public expense for more than ten years prior to the commencement of the action, and the issues made by the pleadings clearly show that this action was commenced and the issues framed upon the theory that said road had become a highway by user and by reason of the expenditure of public money thereon under the provisions of said sec. 851 after its amendment in 1893. For that reason it was error for the court to admit evidence of the establishment of this road from 1887 to 1893. As the court failed to find that said road was worked at public expense for a period of five years, the findings are not sufficient on which to base a judgment in

favor of the plaintiff without a finding to that effect. It was error, under the issues, to enter judgment on the theory that said road had become a highway by prescription prior to 1893.

Several errors were assigned in regard to the admission and rejection of evidence. It will not be necessary for us to pass upon each of them separately. Assignment No. 11 is on the ground that the court permitted the plaintiff to state in what road district certain lands were situated. There was no error in that, as a plat of the road district was introduced in evidence showing the lands included within said district. Objection was raised to the introduction of said plat on the ground of its insufficiency, but we think the plat sufficient and that it was properly admitted.

The question was asked one witness whether or not there was a well-established road there at that time, and he was permitted to answer over the objection of counsel for the defendant. While that calls for a conclusion, we do not think it reversible error. The witness ought to have stated the condition of the road, rather than whether he considered it a well-established road or not.

The court rejected certain evidence offered to show that there were numerous roads running in all directions across the school section involved in this controversy, and there were several questions asked which, if answered, would tend to illuminate the issues made by the pleadings, and it is sufficient for us to say here that in case this action is tried again, the court should admit all evidence showing or tending to show that there was no well-defined and established road along the section line referred to.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion. Costs are awarded to the appellant.

AILSHIE, C. J., Concurring.—The only serious question in this case over which there is any doubt or diversity of opinion among the members of the court is as to whether or not under the statute the road overseer can maintain an action for the removal of an obstruction on a highway that has not been

"duly laid out or erected." Upon the first consideration of this case, I was inclined to the opinion that he could not, but on more deliberate reflection and examination of the various provisions of the statute in reference to highways, and the duties of overseers in relation thereto, I am convinced that he may properly maintain such action. Article 8 of chapter 2, title 6 of the Political Code of 1887 is entitled, "Obstructions and injuries to highways." The first five sections of that article deal with "encroachments" upon highways "duly laid out and recorded," and of the duty of the road overseer to give notice to the person maintaining such encroachment, and provide for the prosecution of an action to abate the same in case the encroachment is denied. It will be seen from an examination of sec. 962 of that article that the person who maintains an *encroachment* upon such a highway is liable to a fine of $10 for each day it is maintained after receiving notice to remove the same. The same section also provides that "if the encroachment is such as to effectually obstruct and prevent the use of the road for vehicles, the overseer must forthwith remove the same." In other words, where the *encroachment* grows into an *obstruction*, then it ceases to be incumbent upon the road overseer to prosecute an action for its abatement, but he may summarily abate it and is vested with all the authority of a public officer to forthwith remove the obstruction or abate the nuisance.

After dealing with the matter of *encroachments* and the method of abating the same, and the subject of forfeitures and penalties for maintaining them, the legislature passes to the consideration of the subject of *"obstructions"* to highways, and in sec. 967 it is provided that, "Whoever obstructs or injuries any highway, or obstructs or diverts any watercourse thereon, is liable to a penalty of $5 for each day such obstruction or injury remains, and must be punished as provided in the Penal Code." The remaining sections of that entire article deal exclusively with what are termed by the legislature *obstructions* to highways. Nothing is therein said about the road overseer maintaining an action for the abatement of "obstructions," but sec. 975 provides that "All pen-

alties or forfeitures given in this chapter, and not otherwise provided for, must be recovered by the road overseers of the respective road districts.'' This latter section was amended by act of February 7, 1899 (Sess. Laws, 1899, p. 131), but the amendment only deals with the use of the fines so collected. An examination of the several sections from 967 to 975 discloses that numerous fines and penalties of different grades and character are prescribed for the different kinds and classes of injuries to highways and obstructions thereon. I take it that the legislature had in mind a clear distinction between an *encroachment* and an *obstruction* on a public highway. By *encroachment* they evidently meant and had reference to some intrusion into or trespass upon a highway which would tend to lessen and diminish the width and extent of the public easement, but which would not amount to a complete blocking up of the highway and a substantial delay to passengers and travelers thereon. This view is borne out by the latter part of sec. 962, wherein it recognizes that an *encroachment* may grow into an *obstruction* such as to ''prevent the use of the road for vehicles'' in which case the overseer is given the right to summarily remove the obstruction. By ''obstruction'' they evidently mean something that would prevent, hinder or substantially delay travel over the highway. The moving of a fence over into the road, the construction of a wall out onto a portion of the right of way, the digging of a ditch along the highway and various other acts of this kind and character might constitute an encroachment upon the highway and easement, and yet not amount to an obstruction so as to materially delay or hinder travel. On the other hand, a fence, building or wall constructed across the entire road would amount to an obstruction that the road overseer is clearly authorized and entitled to summarily remove.

In *Chase v. City of Oshkosh*, 81 Wis. 313, 29 Am. St. Rep. 898, 51 N. W. 560, 15 L. R. A. 553, the supreme court of Wisconsin defined *encroachment* and *obstruction* as used in the road laws of that state as follows: ''An encroachment is a gradual entering on and taking possession by one of what is

not his own; an unlawful gaining upon the rights of possession of another. An obstruction is a blocking up; filling with obstacles or impediments; impeding; embarrassing or opposing the passage along and over the street.'' To the same effect see 3 Words and Phrases, 2385, and 6 Words and Phrases, 4891.

It is also worthy of note that all those sections of article 8, *supra,* providing penalties for placing obstructions in roads uniformly use the word ''highway.'' Now, a highway includes not only roads duly laid out and erected, but also roads that have been used and worked as such for a period of five years. In other words, it is as much a violation of the law to obstruct a highway that has become such by user, even though it has never been recorded, as it is to obstruct a highway that has been duly laid out and recorded. The legislature has as fully authorized the overseer to maintain an action for the collection of a penalty where the obstruction is on an unrecorded road as where it is on a recorded road. In such case the board of commissioners clearly have no control over him in the sense that they can prevent his maintaining an action. It would seem to be the height of inconsistency to hold that he may maintain an action to recover a penalty for obstructing an unrecorded highway and at the same time hold that he cannot maintain an action for the abatement of the same nuisance for which he has collected a penalty. It requires exactly the same evidence in each case. It is a primary and fundamental rule of statutory construction that where the power and authority is granted to do a certain thing, the act necessarily carries with it the implied power to employ the means necessary to accomplish the result.

Sec. 873, Rev. Stat., as amended by act of February 7, 1899 (Sess. Laws, 1899, p. 128), provides that, ''Road overseers, under the direction and supervision and pursuant to orders of the board of commissioners appointing them must,

''First.—Take charge of the public highways within their respective districts.

''Second.—Keep them clear from obstructions and in good repair.''

This section contains seven other subdivisions, among which are the provisions providing for notice to inhabitants liable to do road work and for the collection of commutation fee where work is not performed, making semi-annual reports, etc., etc. I do not think the legislature by this provision meant to limit or subject the right of the overseer to remove obstructions and keep roads clear of impediments to free passage to the orders and directions of the board of commissioners. Such a construction would be inconsistent with the duties of the road overseer and the general purpose and object of the road laws. I think the legislature meant to authorize the road overseer to summarily remove obstructions to highways. On the other hand, it seems to me that if the obstruction is of such a character that the overseer does not feel justified in assuming the responsibility of a summary abatement, that he may pursue his remedy in court and abate the nuisance and remove the obstruction by an action and consequent decree of the court. A man might, in some instances, move a house or other building onto the highway and completely block the same, and he might have his family in the building. On attempting to summarily remove the obstruction it might appear to the overseer that a breach of the peace would be occasioned and violence be the result. In such a case he would undoubtedly prefer to resort to an action, and, in my opinion, he is granted all the implied power and authority necessary to enable him to prosecute such an action. I concur in the reversal of the judgment.

STEWART, J., Concurring Specially.—I concur with the majority opinion that this case should be reversed. I am unable, however, to agree with the majority opinion, holding that the plaintiff, as road overseer, can maintain this action. Justice Sullivan, in the principal opinion, seems to hold that the plaintiff has a right to maintain this action by reason of the fact that under the provisions of sec. 873 of the Rev. Stat. (as amended by Sess. Laws, 1899, p. 128), the road overseer, under the direction of the board of commissioners, takes charge of all public highways of his district, and under

the provisions of the act of February 18, 1899 (Sess. Laws, 1899, p. 306), he is made an elective officer, and as sec. 3634, Rev. Stat., provides, "A public nuisance may be abated by any public body, or officer authorized thereto by law," that therefore the road overseer, being a public officer, has a right to maintain an action to abate as a nuisance any encroachment upon a public highway, as provided by sec. 963 of the Rev. Stat. Chief Justice Ailshie, however, in his concurring opinion, seems to think there is a difference between an encroachment and an obstruction of a public highway, and that while the road overseer might not maintain an action to remove an encroachment upon a public highway "unless the same be duly laid out or erected," yet, inasmuch as the different sections in article 8 of the Political Code provide that a road overseer may maintain an action to recover the penalties for placing obstructions upon a public highway whether "duly laid out or erected" or not, that therefore there is an implied power that the road overseer may also bring an action to remove such obstruction. It will thus be observed that my associates take a contradictory position in the outset, Justice Sullivan holding that a road overseer may maintain an action to remove an encroachment upon a highway because it is a nuisance, whether the highway be "duly laid out or erected" or not, while Chief Justice Ailshie holds that the word "encroachment" only applies to roads "duly laid out or erected" as defined by sec. 960, Rev. Stat., and that the road overseer's authority to maintain the action to remove an obstruction to a public highway whether "duly laid out or erected" is an implied authority by reason of the authority of the road overseer to bring an action to recover the penalty for obstructing a public highway.

It is a general proposition of law that the limit of the power of a public officer is the statute conferring the power, and what further power is necessarily implied, in order to effectuate that which is expressly conferred. The principle stated in the concurring opinion of Chief Justice Ailshie that, "It is a primary and fundamental rule of statutory construction that where the power and authority is granted to do a cer-

tain thing, the act necessarily carries with it the implied power to employ the means necessary to accomplish the result,'' as applied to the plaintiff, means that while he is authorized under article 8, *supra,* to bring an action to recover the penalty therein named, that he is also impliedly authorized to employ whatever means may be necessary to recover such penalty; but the principle cannot be extended so as to authorize a suit entirely different and brought for a different purpose. In the performance of a ministerial duty enjoined by statute, when the mode of performance is prescribed by the statute, no further power is implied, nor has the officer any discretion; he must strictly pursue the statute; his authority is the command of the statute and it is the limit of his power. (Throop on Public Officers, sec. 556; *Ex parte Farrell* (Mont.), 92 Pac. 785.)

Sec. 960, Rev. Stat., provides that if any highway "duly laid out or erected" is encroached upon by fences, buildings, or otherwise, the road overseer of the district may, orally or in writing, require the encroachment to be removed from the highway. And sec. 963 provides that if the encroachment is denied, and the owner refuses to remove the same, the road overseer must commence an action to abate the same as a nuisance. This section only authorizes the road overseer to commence an action to remove a nuisance by reason of an encroachment upon a highway "duly laid out or erected." The words "duly laid out or erected" as used in sec. 960 have reference to roads which have been laid out or erected by the proper officers in the manner prescribed by law. They have reference to formal or official action which the law enjoins upon those charged with the duty of establishing public highways. (*Freshour v. Hihn,* 99 Cal. 443, 34 Pac. 87.) It is admitted in this case that the road was not "duly laid out or erected." As sec. 3634 only authorizes the abatement of a nuisance by "an officer authorized thereto by law," and the law only authorizes the road overseer to bring an action for an encroachment upon a highway "duly laid out or erected," it follows that the road overseer has no authority found in

the statute authorizing him to bring an action to remove an encroachment or obstruction upon any other kind of road.

Sec. 967, Rev. Stat., upon which the chief justice bases his conclusion that the plaintiff has authority to bring this action, provides: "Whoever obstructs or injures any highway, or obstructs or diverts any watercourse thereon, is liable to a penalty of five dollars for each day such obstruction or injury remains, and must be punished as provided in the Penal Code." It says nothing about the authority of the road overseer to bring an action to remove an obstruction to a public highway. The authority to bring an action to recover a penalty for placing an obstruction in a highway, is not authority to bring an action to remove an obstruction to a highway. The majority opinion, however, holds that this action is not brought under sec. 960, *supra*, but is brought under sec. 851, Rev. Stat., as amended. This latter section provides that "roads laid out and recorded as highways by order of the board of commissioners, and all roads used as such, for a period of five years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the board of commissioners, are highways."

Paragraph 3 of the complaint alleges that for more than ten years immediately preceding the commencement of this action, continuously and uninterruptedly, except when interfered with during the past two years by the defendant, said road has been used, worked and kept up at the expense of the public as a public highway. It will thus be seen that this allegation does not bring this case within that class of cases which the statute authorizes the road overseer to maintain, for the purpose of abating as a nuisance any encroachment upon a public highway. Had the legislature intended to authorize a road overseer to bring an action to abate as a nuisance an obstruction upon a public highway before the same has been "duly laid out or erected," they certainly would have said so.

Sec. 873, Rev. Stat., as amended by laws of 1899, p. 128, provides that "Road overseers, under the direction and super-

158        MESERVEY v. GULLIFORD.        [14 Idaho,

vision, and pursuant to orders of the board of commissioners appointing them, must: First.—Take charge of the public highways within their respective districts.    Second.—Keep them clear from obstructions and in good repair.'' It is not alleged in the complaint nor proved upon the trial that the board of commissioners ever authorized the plaintiff to take charge of the highway in controversy in this case, nor to keep the same free from obstructions or in good repair.  In fact, there is nothing alleged in the complaint or proved upon the trial which shows that the highway in controversy was ever "laid out or erected" as such, or that it was ever recognized in any way by the commissioners of Fremont county as a public highway, or that its course or width was ever fixed or established in any way.    Before the plaintiff, as road overseer, has any authority to declare the same a public highway, and bring an action to remove obstructions placed thereon, his authority must clearly appear in the statutes.

Sec. 870, subd. 3, Rev. Stat., authorizes the board of commissioners to cause to be recorded as highways  such roads as have become such by usage or abandonment by the public. These various sections of the statutes of this state are almost identical with the statutes of California, bearing upon the same subject.    In the case of *Smith v. Talbot,* 77 Cal. 16, 18 Pac. 795, the court held that no action lies under sec. 2734 of the Political Code at the suit of a road overseer to abate an encroachment of a highway as a nuisance, and for the penalty therein provided, unless the encroachment came into existence after the highway is "laid out and completed." If placed there by the owner of the land before the highway is laid out, the remedy of the road overseer is to pursue the course prescribed by sec. 2695 of the Political Code.    Sec. 2734 of the California code referred to in the above opinion, is identical with sec. 963, Revised Statutes of this state, and referred to in the opinion of Justice Sullivan, and sec. 2965 of the Political Code of California referred to in the above opinion, is the same as sec. 936 of the Revised Statutes of this state.

There is another remedy clearly provided for by the statutes of this state. Subd. 4, sec. 1759, Rev. Stat., authorizes the board of county commissioners "to lay out, maintain, control, and manage public roads, turnpikes, ferries, and bridges, within the county and levy such taxes therefor as authorized by law." And subd. 13 of the same section provides, "to direct and control the prosecution and defense of all suits to which the county is a party in interest, employ counsel to conduct the same, with or without the district attorney, as they may direct." This statute clearly provides a remedy for a case like that alleged in the complaint, and the county commissioners are clearly authorized under sec. 3634, Rev. Stat., to bring an action to abate a public nuisance.

I am unable to find in the statutes any authority giving to the plaintiff the right to maintain this action. For these reasons I dissent from that part of the opinion of the majority which holds that the plaintiff can maintain his action.